**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>　　　　　　　　　　　　　　　)<br>　　　　vs.　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　)<br>ERNEST BRYAN,　　　　　　　 )<br>　　　　　　　　　　　　　　　)<br>　　　　　　　Defendant.　　　　)<br>_____) | No. 9:13-cr-716-DCN<br><br>**ORDER** |

　　　　This matter comes before the court on defendant Ernest Bryan's ("Bryan") motion for compassionate release, ECF No. 84. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

　　　　On August 13, 2013, the government charged Bryan in a three-count indictment for (1) possession with intent to distribute cocaine base, marijuana, and MDMA, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(D); (2) possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). ECF No. 2. On December 1, 2014, Bryan pled guilty to counts one and two of the indictment pursuant to a written plea agreement. ECF No. 41. On August 7, 2015, the court sentenced Bryan to 151 months in prison followed by three years of supervised release. ECF No. 53. He is currently serving his sentence in FCI Terminal Island, San Pedro, California.

　　　　On August 22, 2020, Bryan filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 84. The government filed a response in opposition on October 9, 2020, ECF No. 88, to which Bryan replied on November 3,

1

2020, ECF No. 90. On February 17, 2021, Bryan filed a supplement to his motion, alerting the court to two articles detailing the impact of COVID-19 on the institution in which Bryan is serving his sentence. ECF No. 91.

## II. STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons warrant such a reduction." Courts generally refer to requests under this section as motions for "compassionate release." United States v. Norris, 2020 WL 2110640, at *1 (E.D.N.C. Apr. 30, 2020). Prior to the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i) by authorizing defendants themselves to file motions for compassionate relief with the sentencing court after exhausting available administrative remedies. United States v. Griggs, 2020 WL 2614867, at *3 (D.S.C. May 22, 2020). Comments to § 1B1.13 of the United States Sentencing Commission's advisory Guidelines Manual provides four categories of "extraordinary and compelling circumstances" that may warrant a sentence reduction: (1) medical condition of the defendant, (2) age of the defendant, (3) family circumstances, and (4) a catch-all "other reasons." U.S.S.C. § 1B1.13, comment. n.1.[1]

---

[1] Because "[t]he Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants," the comments to § 1B 1.13 technically apply to motions filed by the BOP prior to the First Step Act. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). Therefore, "[w]hile the old policy

2

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. Beck, 425 F. Supp. 3d at 579. If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider the factors set forth in § 3553(a)" to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A)(i). Further, the court must ensure that the defendant is not "a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. A compassionate relief defendant "has the burden of establishing that such relief is warranted." Griggs, 2020 WL 2614867 at *3.

### III. DISCUSSION

**A. Exhaustion**

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i) provides that a defendant does so when: (1) the "defendant has fully exhausted his administrative rights to appeal a failure of the BOP to bring a motion on his behalf," or (2) the defendant requested compassionate relief from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier." On April 2, 2019, Bryan requested compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 84-1, which Warden Felicia Ponce denied on March 13, 2020, ECF No. 84-2. On July 31, 2020, BOP's general counsel reviewed Bryan's request and denied it. ECF No. 84-3. The court finds that because Bryan's request to Warden Ponce

---

statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentencing reduction under § 3582(c)(1)(A)(i)." Id.

3

was denied initially and upon review, Bryan has exhausted his administrative remedies, meaning that the court may entertain his motion.

### B. Extraordinary and Compelling Circumstances

Bryan argues that his medical circumstances justify his immediate release from prison.[2] Bryan has been confined to a wheelchair since January 1990 as a result of a gunshot wound to his spinal cord. ECF No. 84 at 3. His paraplegia is permanent and irreversible. Additionally, Bryan's medical records indicate diagnoses of: Adynamic Ileus (chronic bowel obstruction due to paralysis); history of infection; Methicillin-resistant Staphylococcus aureus ("MRSA"); Impacted Cerumen (blockage of ear canal causing hearing loss and chronic pain); Constipation; Iron Deficiency Anemia; Muscle Spasm; Chronic Pain Syndrome; Diabetes Mellitus Type II; Peripheral Neuropathy; Hyperlipidemia; and Hypertension. ECF No. 84 at 3.

The Sentencing Commission's policy statements provide that a defendant's medical condition may constitute "extraordinary and compelling" circumstances where the defendant is suffering from:

> [1.] a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)[;]
> [2.] a serious physical or medical condition[;]
> [3.] a serious functional or cognitive impairment[;] or

---

[2] Bryan requests compassionate release pursuant to BOP Program Statement 5050.50, which states that compassionate release may be considered when inmates have suffered a debilitating injury from which they will not recover. The Fourth Circuit has held that a district court must rely on the Sentencing Commissioner's policy statements, rather than BOP Program Statements, when both apply to a defendant's circumstances. United States v. Taylor, 820 F. App'x 229, 230 (4th Cir. 2020) ("The Sentencing Commission's policy statements therefore control the disposition of [the defendant]'s motion, and not the BOP program statements, based on Congress' statutory directives."). As such, the court analyzes Bryan's motion under the Sentencing Commission's policy statements, not BOP's program statements. U.S.S.C. § 1B1.13, comment. n.1.

4

> [4.] experiencing deteriorating physical or mental health because of the aging process
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

The court finds that Bryan has not demonstrated extraordinary and compelling circumstances for two reasons. One, the majority of Bryan's medical conditions existed prior to Bryan's convictions. In fact, Bryan was paraplegic and confined to a wheelchair when he committed the offenses for which he is currently incarcerated. In other words, Bryan was able to engage in conduct that constitutes serious federal crimes, even when suffering from many of the conditions from which he now suffers, including paraplegia. As the government notes, the court considered Bryan's significant medical conditions when it sentenced him, and Bryan has failed to demonstrate the ways in which his condition has worsened since his incarceration. Second, and relatedly, Bryan has failed to adequately demonstrate that his condition "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, Application Note 1(A). While Bryan's medical records confirm that he suffers from a number of serious conditions, the BOP found that those conditions do not significantly inhibit Bryan from providing self-care:

> Mr. Bryan has been independently mobile with the use of a wheelchair with which he can complete transfers and which he can self-propel. He is generally independent with his Activities of Daily Living (ADLs) and Instrumental Activities of Daily Living (IADLs) such as bathing, dressing using adaptive equipment, grooming, feeding, using a condom catheter and leg bag for urination, which he can independently manage, using his phone and computer, managing his own medication, preparing meals/snacks outside of food service, completing and managing his commissary list, light housekeeping and navigating the correctional environment. It was noted

>> that Mr. Bryan does require assistance with heavy housekeeping and with laundry. Despite these needs, Mr. Bryan is housed in the general population and, according to treatment providers, his medical conditions are considered chronic but currently stable.

ECF No. 84-3 at 1–2. Bryan has not contested his ability to provide self-care as outlined by the BOP, other than stating that "the BOP's general counsel failed to consider his true medical circumstances and the severity of the co-morbidities with which he is chronically afflicted." ECF No. 84 at 5. The burden is on Bryan to demonstrate that his circumstances are "extraordinary and compelling." Griggs, 2020 WL 2614867 at *3. Because he has failed to demonstrate that his conditions have deteriorated to the point that he cannot adequately care for himself within his institutional environment, Bryan has not shown that "extraordinary and compelling" circumstances justify his release from prison.[3]

### C.  § 3553(a) Factors & § 3142(g)

Even if Bryan had demonstrated that his circumstances are extraordinary and compelling, the sentencing factors weigh against his release.

---

[3] Bryan has not moved for compassionate release on the basis of the COVID-19 pandemic. Six months after filing his motion, Bryan supplemented his motion with articles concerning the effect of the pandemic on the conditions of his institution. Even still, Bryan submitted the articles bereft of any analysis or even a claim that the pandemic renders his circumstances "extraordinary and compelling." These articles, one of which is from May 2020 and the other of which is not dated, standing alone, do not give the court an adequate basis from which it might grant compassionate release. While the court recognizes the unique risk the incarcerated population shoulders as a whole during the pandemic, the law does not authorize granting a motion for compassionate release lightly, and, in the absence of an argument or evidence indicating that the pandemic presents Bryan with extraordinary and compelling circumstances, the court cannot grant relief on that basis. Moreover, Bryan did not petition BOP on that basis, meaning that he has not exhausted his administrative remedies on that front.

In sentencing a defendant or, in this case, determining whether a reduction is justified, 18 U.S.C. § 3553(a) requires a court "impose a sentence sufficient, but not greater than necessary," considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
> [. . .]
> (5) any pertinent policy statement;
> [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

Bryan's lengthy criminal record includes a 1994 conviction for possession of a firearm as a felon and possession of a firearm in furtherance of a drug trafficking crime, a 1995 conviction for his role in a cocaine conspiracy, and a later conviction for possession with intent to distribute heroin. ECF No. 88 at 5. In the instant case, officers found two firearms in Bryan's home, and two firearms, 2,400 grams of marijuana, approximately 28 grams of cocaine base, and approximately 11 grams of MDMA in his car. Id. Critically, Bryan committed these crimes after he became paralyzed. In other words, Bryan possessed and sold a significant amount of drugs and possessed dangerous firearms while confined to a wheelchair and suffering from many of the conditions that form the basis of his request for release. To be sure, Bryan produced a BOP risk assessment that scored

him as "low" risk to reoffend and "low" risk of violence. ECF Nos. 90 and 88-4. However, the court agrees with the government that a reduction to Bryan's sentence would not adequately reflect the seriousness of the crimes Bryan committed, nor would it promote respect for the law. At bottom, Bryan has demonstrated through his past acts that his paralysis does not inhibit his ability to commit crimes, and the court already factored Bryan's medical conditions into the sentence he is currently serving. The court declines to further reduce his sentence on the same basis. Thus, Bryan's motion is denied.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2021**
**Charleston, South Carolina**